BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Andrew S. Friedman (to seek pro hac vice admission)
Wendy J. Harrison (CA 151090)
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone:  (602) 274-1100
　　　　afriedman@BFFB.com
　　　　wharrison@BFFB.com

CHAVEZ & GERTLER, L.L.P.
Mark A. Chavez (SBN 90858)
Jonathan Gertler (SBN 111531)
Nance F. Becker (SBN 99292)
42 Miller Avenue
Mill Valley, California 94941
Telephone:  (415) 381-5599
　　　　mark@chavezgertler.com
　　　　nance@chavezgertler.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL GARCIA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION and COUNTRYWIDE HOME LOANS, INC.,<br><br>　　　　Defendants. | No. EDCV07-1161 VAP(JCRx)<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br><br>1. Violations of the Equal Credit Opportunity Act;<br><br>2. Violations of the Fair Housing Act;<br><br>3. Violations of the Civil Rights Act, 42 U.S.C. §1981; and<br><br>4. Violations of the Civil Rights Act, 42 U.S.C. §1982.<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

1.      Plaintiff Gabriel Garcia ("Garcia" or "Plaintiff"), by and through his attorneys, brings this action against Countrywide Financial Corporation and Countrywide Home Loans, Inc. (together, "COUNTRYWIDE" or "Defendant") seeking redress for racially discriminatory lending practices under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA"), the Fair Housing Act, 42 U.S.C. § 3601 et seq ("FHA"), and the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982, on behalf of himself and all others similarly situated.

## INTRODUCTION

2.      This class action challenges Defendant COUNTRYWIDE's racially discriminatory mortgage lending practices.  Defendant COUNTRYWIDE has engaged in both intentional and disparate impact discrimination through its development and implementation of mortgage pricing policies and procedures that provide financial incentives to its authorized loan officers, mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates, charge additional fees, and impose unfavorable terms and costs on minority borrowers.

3.      Defendant COUNTRYWIDE's authorized loan officers, mortgage brokers and correspondent lenders are given discretion – and actually encouraged and incentivized – to increase interest rates, charge additional fees, and include prepayment penalties and other less favorable terms in loans to certain borrowers. These policies directly lead to minorities receiving home loans with higher interest rates and higher fees and costs than similarly situated non-minority borrowers.

4.      As used in this Complaint, "minority" or "minorities" shall refer to all non-Caucasians and other minority racial groups protected under 42 U.S.C. §§ 1981, 1982, and 3604, and 15 U.S.C. § 1691.

5.      Plaintiff brings this action on behalf of all minorities (hereinafter collectively referred to as the "Class" or "members of the Class") who have entered into residential mortgage loan contracts that were financed or purchased by

1  Defendant COUNTRYWIDE, and who have been subjected to racial
2  discrimination.

3      6.    Plaintiff seeks injunctive, declaratory, and equitable relief, punitive
4  damages, and other monetary and non-monetary remedies for Defendant
5  COUNTRYWIDE's racially discriminatory conduct.

6  **JURISDICTION AND VENUE**

7      7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives
8  this Court original jurisdiction over civil actions arising under federal law.

9      8.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a
10  substantial part of the events giving rise to Plaintiff's and the Class's claims
11  occurred in this District.  In particular, Plaintiff Garcia resides in this District and
12  Defendant financed Plaintiff's purchase of property located in this District.

13  **PARTIES**

14      9.    Plaintiff Gabriel Garcia is a Latino homeowner who resides at 10045
15  Amherst Avenue, Montclair, CA 91763.

16      10.    Defendant Countrywide Financial Corporation is a diversified
17  financial services company which provides mortgage banking and loan services
18  through its subsidiary, defendant Countrywide Home Loans, and other companies
19  in the "Countrywide family."  Countrywide Financial and its affiliated companies
20  operate throughout the United States, including in California.

21      11.    Defendant Countrywide Home Loans, Inc. is a mortgage lender with
22  its principal place of business in Calabasas, California.  Mr. Garcia's loan was
23  funded  and initially serviced by COUNTRYWIDE's office in Anaheim,
24  California.

25  / / /
26  / / /
27  / / /
28  / / /

- 2 -

1

## FACTS

2

### I.   HISTORICAL DISCRIMINATION IN AMERICAN MORTGAGE
3
### LENDING

4       12.    Racial discrimination in America's mortgage lending industry has a

5   long legacy.  As this Complaint attests, that unfortunate history continues to this

6   day due to discriminatory treatment of minority borrowers by mortgage banks such

7   as Defendant COUNTRYWIDE.

8       13.    The Joint Center for Housing Studies at Harvard University conducted

9   a study in 2005 called "The Dual Mortgage Market: The Persistence of

10  Discrimination in Mortgage Lending," which summarizes that history well.  It

11  states that "[i]n the immediate post-World War II period, racial discrimination in

12  mortgage lending was easy to spot. From government-sponsored racial covenants

13  in the Federal Housing Administration (FHA) guidelines to the redlining practices

14  of private mortgage lenders and financial institutions, minorities were denied

15  access to home mortgages in ways that severely limited their ability to purchase a

16  home. Today, mortgage lending discrimination is more subtle. . . . [M]ore than

17  three decades after the enactment of national fair lending legislation, minority

18  consumers continue to have less-than-equal access to loans at the best prices and

19  on the best terms that their credit history, income, and other individual financial

20  considerations merit."

21      14.    The federal Home Mortgage Disclosure Act ("HMDA") requires

22  mortgage lenders to report information about the home loans they process each

23  year.  In 2005, lenders reported information on more than 30 million home loan

24  applications pursuant to HMDA.  In 1989, Congress required lenders to begin

25  disclosing information about mortgage borrowers' race and ethnicity.  In 2004,

26  concerned with potential racial discrimination in loan pricing, and recognizing that

27  racial or other types of discrimination can occur when loan officers and mortgage

28  brokers have latitude in setting interest rates, the Federal Reserve Board began

CLASS ACTION COMPLAINT

1   requiring lenders to also report information concerning rates, points, and fees,

2   charged to borrowers on high-cost loans.

3       15.    HMDA data for 2004 reveals profound loan pricing disparities

4   between Hispanic borrowers and non-Hispanic whites even after controlling for

5   borrowers' gender, income, property location, and loan amount.  After accounting

6   for those differences in the 2004 HMDA data, Hispanic borrowers were still almost

7   twice as likely to receive a higher-rate home loan as non-Hispanic whites.

8   (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf (last viewed

9   August 14, 2007).)  In a speech last year, the Vice-Chairman of the Federal

10  Deposit Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data

11  and observed that that data "clearly indicated" that Hispanics are more likely to

12  receive high-cost home loans than are non-Hispanic whites.

13  (http://www.fdic.gov/news/news/speeches/archives/2006/chairman/spoct1806.html

14  (last viewed August 15, 2007).)

15      16.    Likewise, HMDA data for 2005 shows that "for conventional home-

16  purchase loans, the gross mean incidence of higher-priced lending was 54.7

17  percent for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5

18  percentage points."  Id. at A159.  The situation is similar for refinancings, where

19  there is a difference of 28.3 percentage points between blacks and non-Hispanic

20  whites.  Avery, Brevoort, and Canner, Federal Reserve Bulletin, A124, A159.

21      17.    The Association of Community Organizations for Reform Now

22  (ACORN) released a report entitled "The High Cost of Credit: Disparities in High-

23  priced Refinanced Loans to Minority Homeowners in 125 American Cities," dated

24  September 27, 2005, which found that "[i]n every metropolitan area where at least

25  50 refinances were made to African-American homeowners, African-Americans

26  were more likely to receive a high-cost loan than White homeowners."

27      18.    Defendant COUNTRYWIDE's lending practices are of a piece with

28  the foregoing history.

CLASS ACTION COMPLAINT

## II.  PAST AS PROLOGUE: DEFENDANT COUNTRYWIDE'S DISCRIMINATORY LENDING POLICIES

### A.  Defendant Countrywide's Relationships With Its Mortgage Brokers And Correspondent Lenders

19.  Defendant COUNTRYWIDE represents itself as "America's #1 home lender" as well as "America's #1 Lender to Minorities." http://about.countrywide.com/about/about.aspx (last visited September 4, 2007).  It originates and funds mortgage loans through loan officers, brokers and through a network of correspondent lenders.  On information and belief, the loan officers, mortgage brokers and correspondent lenders that work with COUNTRYWIDE broker and fund loans in collaboration with COUNTRYWIDE, and in conformance with COUNTRYWIDE's credit-pricing policies and procedures.

20.  COUNTRYWIDE's Consumer Markets Division offers residential mortgages, equity lines and other financial products directly to qualified consumers and to real estate professionals and builders.  COUNTRYWIDE's Wholesale Lending Division, "America's Wholesale Lender," provides home loans to consumers whose loans are originated and processed by the 35,000 mortgage brokers who work with COUNTRYWIDE. http://about.countrywide.com/CFC/mortgagebanking.aspx (last visited September 7, 2007).

21.  Especially through its Wholesale Lending Division, COUNTRYWIDE has followed – and continues to follow – discretionary loan pricing procedures that cause minority borrowers to purchase loans with prepayment penalties and other unfavorable terms, and to pay subjective fees such as yield spread premiums and other mortgage-related finance charges, at higher rates and than similarly situated non-minority borrowers.  Defendant COUNTRYWIDE has intentionally discriminated against Plaintiff and Class Members through these policies and procedures – systematically giving them

1  mortgage loans with less favorable conditions than were given to similarly situated

2  non-minority borrowers.  This pattern of discrimination is not the result of random

3  or non-discriminatory factors.  Rather, it is a direct result of Defendant

4  COUNTRYWIDE's mortgage lending policies and procedures.

5      22.    On information and belief, Defendant COUNTRYWIDE's authorized

6  loan officers, mortgage brokers and correspondent lenders receive part or all of

7  their compensation from Defendant COUNTRYWIDE based on the interest rate

8  and terms, such as late payment penalties and adjustable interest rates, charged to

9  the borrower.  Defendant COUNTRYWIDE's in-house loan officers, authorized

10  brokers and correspondent lenders receive more compensation from Defendant

11  COUNTRYWIDE when they steer their clients into COUNTRYWIDE loans with

12  higher interest rates, penalties and fees, and less compensation when they place

13  their clients into COUNTRYWIDE loans with lower interest rates, penalties and

14  fees.

15      23.    Defendant COUNTRYWIDE intentionally and actively implements

16  this discriminatory credit-pricing policy in a number of ways, including actively

17  educating its loan officers and brokers about COUNTRYWIDE's credit policies

18  and procedures, offering a biased commission structure, and directing its loan

19  officers and brokers regarding the marketing of COUNTRYWIDE loan products.

20      24.    These credit-pricing policies and procedures permit Defendant

21  COUNTRYWIDE's authorized loan officers, mortgage brokers and correspondent

22  lenders subjectively to charge certain loan applicants yield spread premiums and

23  other discretionary charges, including minority loan applicants.

24      25.    This pattern of discrimination cannot be justified by business

25  necessity, and could be avoided through the use of alternative policies and

26  procedures that have less discriminatory impact and no less business efficacy.

27  / / /

28  / / /

**B.    Defendant COUNTRYWIDE's Discretionary Credit Pricing System:  Designed to Discriminate**

26.    Defendant COUNTRYWIDE discriminates through its authorized mortgage brokers.  Authorized mortgage brokers act as Defendant COUNTRYWIDE's agents in originating mortgage loans.  Authorized mortgage brokers enter into agreements with Defendant COUNTRYWIDE to accept loan applications on behalf of Defendant COUNTRYWIDE; communicate to loan applicants financing terms and rates set by Defendant COUNTRYWIDE; tell loan applicants about Defendant COUNTRYWIDE's various financing options; and ultimately originate mortgage loans funded by Defendant COUNTRYWIDE using Defendant COUNTRYWIDE's forms and in accordance with Defendant COUNTRYWIDE's policies and procedures.

27.    Likewise with Defendant COUNTRYWIDE's authorized correspondent lenders and loan officers, who also act as Defendant COUNTRYWIDE's agents in originating loans. Correspondent mortgage lenders and loan officers that work with Defendant COUNTRYWIDE make loans in accordance with Defendant COUNTRYWIDE's credit policies and procedures. Defendant COUNTRYWIDE funds correspondent-generated loans before or shortly after they go to closing.

28.    Defendant COUNTRYWIDE, then, funds loans originated by its loan officers, authorized mortgage brokers and correspondent lenders, sets the terms and conditions of credit on those loans, and shoulders part or all of the risk on such loans.  Defendant COUNTRYWIDE actively and intentionally enforces its credit policies through its authorized loan officers, mortgage brokers and correspondent lenders in a variety of ways.  Among other things, Defendant COUNTRYWIDE supplies its loan officers, correspondent lenders and mortgage brokers with an array of loan-related forms and agreements, including loan contracts, loan applications, and instructions on completing loan applications and contracts.  And,

**CLASS ACTION COMPLAINT**

as noted above, COUNTRYWIDE actively trains its authorized brokers to follow COUNTRYWIDE's policies and procedures, and reinforces that training with marketing support.

29.    Once a loan applicant has provided credit information to Defendant COUNTRYWIDE through a loan officer, mortgage broker or correspondent lender, Defendant COUNTRYWIDE performs an initial objective credit analysis. At that point, Defendant COUNTRYWIDE evaluates numerous risk-related credit variables, including debt-to-income ratios, loan-to-value ratios, credit bureau histories, debt ratios, bankruptcies, automobile repossessions, prior foreclosures, payment histories, credit scores, and the like.

30.    Defendant COUNTRYWIDE derives a risk-based financing rate from these objective factors, which Defendant COUNTRYWIDE and others in the mortgage industry simply call the "par rate." (Defendant COUNTRYWIDE's brokers and correspondent lenders can also estimate the par rates by referring to an applicant's credit bureau-determined credit score.)

31.    Although Defendant COUNTRYWIDE's initial analysis applies objective criteria to calculate this risk-related interest rate, Defendant COUNTRYWIDE as a matter of policy and procedure authorizes its loan officers, brokers and correspondent lenders to mark up that rate later, and also impose additional non-risk-based charges including "yield spread" or "broker premiums", and other discretionary fees.  Defendant COUNTRYWIDE regularly communicates applicable par rates, authorized yield spread premiums, and other discretionary fees to its loan officers, brokers and correspondent lenders via "rate sheets" and other communications.

32.    Defendant COUNTRYWIDE gives its loan officers, authorized mortgage brokers and correspondent lenders discretion to impose yield spread premiums and other subjective fees on borrowers.  When borrowers pay yield spread premiums, Defendant COUNTRYWIDE shares in additional income

1  generated by the premium because the yield spread premium-affected borrower is

2  locked into a higher interest rate going forward on their COUNTRYWIDE loan

3  than they would be if they had been placed in a par rate loan without a yield spread

4  premium.

5      33.    Defendant COUNTRYWIDE's borrowers pay yield spread premiums

6  and other discretionary fees that inflate their finance charges not knowing that a

7  portion of their finance charges are non-risk-related.

8      34.    Defendant COUNTRYWIDE's policies and procedures concerning

9  the assessment of yield spread premiums and other discretionary fees cause

10  persons with identical or similar credit scores to pay differing amounts for

11  obtaining credit.  Such subjective loan pricing - which by design imposes differing

12  finance charges on persons with the same or similar credit profiles - disparately

13  impacts Defendant COUNTRYWIDE's minority borrowers.

14      35.    While Defendant COUNTRYWIDE's use of a common credit policy

15  for all loan applicants might appear to be racially neutral, Defendant

16  COUNTRYWIDE's use of yield spread premiums and other discretionary fees

17  disproportionately and adversely affects minorities (relative to similarly situated

18  non-minorities).  Defendant COUNTRYWIDE's credit policy causes minorities to

19  pay disparately more discretionary finance charges than similarly situated non-

20  minorities.  As the HMDA data cited herein indicates, minorities are substantially

21  more likely than similarly situated non-minorities to pay such charges.

22      36.    Defendant COUNTRYWIDE's credit policy is in fact intentionally

23  discriminatory.  As described above, Defendant COUNTRYWIDE's credit pricing

24  policy by design discriminates against minority borrowers and directly causes this

25  disparate impact.

26  / / /

27  / / /

28  / / /

## III.   DEFENDANT COUNTRYWIDE IMPOSED DISCRIMINATORY FEES ON PLAINTIFFS

37.   Defendant COUNTRYWIDE's discriminatory credit pricing policy directly damaged Plaintiff.  On or about February 27, 2006, Mr. Garcia obtained $415,000 in financing from COUNTRYWIDE to purchase a single-family home at 10045 Amherst Avenue, Montclair, California.  The financing was arranged through Zeferino Parias dba ZF Lending, a Los Angeles-based mortgage firm which, on information and belief, has a "direct lending" relationship with COUNTRYWIDE.

38.   Mr. Garcia's financing consisted of two loans:  a 30-year loan in the principal amount of $332,000, bearing interest at the rate of 6.55% and secured by a first deed of trust in favor of COUNTRYWIDE, and a 15-year loan in the principal amount of $83,000, bearing interest at the rate of 9.5% and secured by a second deed of trust in favor of "America's Wholesale Lender."  The second mortgage includes a substantial balloon payment and significant prepayment penalties.

39.   The HUD Settlement Statement issued by the escrow agent and the loan Closing Instructions evidence that Garcia paid the following charges, among others,  in connection with the transaction: ZF Lending received an $8,300 "broker origination fee," a $1,250 "broker administration fee," and a $550 "processing fee" from the borrower, as well as a "broker premium" (*i.e.*, a yield spread premium) of $830 (0.250%) paid by Countrywide.  Countrywide also charged Mr. Garcia a $150 "loan tie in fee" and a $995 "underwriting fee."  On information and belief, all of these fees were assessed pursuant to Defendant COUNTRYWIDE's credit pricing policies.

40.   ZF Lending and COUNTRYWIDE knew that Plaintiff was a minority borrower because, among other things, Spanish is Mr. Garcia's primary language, and the agent who filled out his application described him as "Latino or Hispanic."

41.    As a result of Defendant COUNTRYWIDE's discriminatory conduct, Plaintiff received a loan on worse terms with higher costs than similarly situated non-minority borrowers.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff repeats and re-alleges each allegation above as if set forth herein in full.

43.    This class action is brought pursuant to ECOA, the FHA and the Civil Rights Act by Plaintiff on behalf of himself and all minority borrowers (the "Class") who entered into residential mortgage loan contracts that were financed or purchased by Defendant COUNTRYWIDE, and who were harmed by Defendants' discriminatory conduct.

44.    Plaintiff sues on his own behalf, and on behalf of a class of persons under Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

45.    Plaintiff does not know the exact size of the Class or identities of the members of the Class, since that information is in the exclusive control of Defendant COUNTRYWIDE. Plaintiff believes that the Class includes many thousands, or tens of thousands of individuals, who are geographically dispersed throughout the United States. Therefore, the Class is so numerous that joinder of all members is impracticable.

46.    All members of the Class have been subjected to and affected by Defendant COUNTRYWIDE's practice of assessing yield spread premiums and other discretionary fees on mortgage loans. There are questions of law and fact that are common to the Class, and that predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

    a.    the nature and scope of Defendant COUNTRYWIDE's policies and procedures concerning the assessment of yield spread or

CLASS ACTION COMPLAINT

broker premiums and other discretionary fees on mortgage loans it funds;

b. whether Defendant COUNTRYWIDE discriminated against Class Members by charging them higher interest, fees, and costs, than Defendant COUNTRYWIDE charges similarly situated non-minority borrowers;

c. whether Defendant COUNTRYWIDE discriminated against Class Members by including prepayment penalties and other unfavorable terms in their loans, which were not generally included in loans to similarly situated non-minority borrowers;

d. whether Defendant COUNTRYWIDE's intent in its discriminatory policies and procedures was racially motivated;

e. whether Defendant COUNTRYWIDE can articulate any legitimate non-discriminatory reason for its policies and procedures;

f. whether Defendant COUNTRYWIDE and its subsidiaries are creditors under the ECOA because, in the ordinary course of business, they participate in the decision of whether or not to extend credit to consumers;

g. whether Defendant COUNTRYWIDE's policies and procedures regarding yield spread premiums and other discretionary fees have a disparate impact on minority borrowers;

h. whether Defendant COUNTRYWIDE has any business justification for its policies and procedures.

i. whether there is a less discriminatory alternative to these policies and procedures;

CLASS ACTION COMPLAINT

j.    whether Defendant COUNTRYWIDE devised and deployed a scheme or common course of conduct that acted to deceive Plaintiffs and members of the Class;

k.    whether the Court can enter declaratory and injunctive relief; and

l.    the proper measure of disgorgement or monetary relief.

47.    Plaintiff's claims are typical of the claims of the Class, and do not conflict with the interests of any other members of the Class in that both Plaintiff, and the other members of the Class, were subjected to the same yield spread premiums and other discretionary fees that have disproportionately affected minority borrowers.

48.    Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff is committed to vigorous prosecution of the Class's claims, and he has retained attorneys who have extensive experience in consumer protection and credit discrimination actions and in class actions.

49.    Defendant COUNTRYWIDE has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

50.    A class action is superior to other methods for the speedy and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

## ACCRUAL, FRAUDULENT CONCEALMENT, CONTINUING VIOLATION, AND EQUITABLE TOLLING

51.    Plaintiff and Class Members did not know, and could not reasonably have known, that they would receive from Defendant COUNTRYWIDE mortgage loans with worse terms and higher costs and fees than non-minorities.  Their claims did not accrue until shortly before the filing of this action.

CLASS ACTION COMPLAINT

52.    Defendant COUNTRYWIDE's discriminatory conduct was inherently self-concealing.  Defendant COUNTRYWIDE knew that Plaintiff and Class Members could not determine the relationship between the terms, fees, and costs of their loans to those available to non-minorities, or to the services that COUNTRYWIDE and its contracted mortgage brokers provided.  Defendant COUNTRYWIDE has superior knowledge about the terms, fees, and costs of its loans, and knew that the terms, fees and costs provided to minorities, unbeknownst to them, were substantially worse than the loans provided to non-minorities.

53.    Defendant COUNTRYWIDE has not released or provided information about its discrimination against Plaintiff and Class Members, and has actively and fraudulently concealed its discriminatory practices.

54.    As a result of the foregoing, Plaintiff and Class Members in the exercise of due diligence could not have reasonably discovered the discriminatory practices, and did not do so until just recently.  For the reasons alleged above, the members of the Class still do not know that they have been and continue to be injured by Defendant COUNTRYWIDE's discriminatory conduct.

55.    Defendant COUNTRYWIDE's discriminatory conduct is continuing in nature, and Defendant COUNTRYWIDE has committed discriminatory acts throughout the limitations period.  Class members whose loans include higher interest rates due to COUNTRYWIDE's discrimination continue to be harmed every time an interest payment becomes due on such loans.  Other Class members have contracted with COUNTRYWIDE, and been subject to the identical discriminatory practices, within the applicable period of limitations.

56.    There is a substantial nexus between the acts of discrimination occurring within the limitation periods prior to filing suit, and the acts of discrimination before that time.  The acts involve the same type of discrimination and are recurring, not isolated events.

**CLASS ACTION COMPLAINT**

57.    Defendant COUNTRYWIDE specifically misled Plaintiff and Class Members into believing that the mortgage-related terms, fees, and costs they were offered were fair, reasonable, and the same as offered to non-minorities, and took steps to conceal its fraudulent and unfair conduct.

58.    The statute of limitations applicable to any claims that Plaintiff or other Class Members have brought or could bring as a result of the unlawful and fraudulent concealment and course of conduct described herein, have been tolled as a result of Defendant COUNTRYWIDE's fraudulent concealment.  In addition, Plaintiff and the Class did not and could not have discovered their causes of action until the time alleged below, thereby tolling any applicable statute of limitations.

## COUNT I

## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

## (15 U.S.C. §§ 1691 - 1691f)

59.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.    Defendant COUNTRYWIDE engages in credit transactions through its offering, granting, and purchasing of residential mortgage loans.

61.    By imposing higher interest rates, discretionary fees and penalties on residential mortgage loans to Plaintiff and Class Members than it imposed on non-minority mortgage borrowers, Defendant COUNTRYWIDE has discriminated against Plaintiff and members of the Class with respect to a credit transaction on the basis of race in violation of the ECOA.  15 U.S.C. § 1691(a).

62.    In addition, Defendant COUNTRYWIDE's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, have a disparate impact on Plaintiff and Class Members.

CLASS ACTION COMPLAINT

63.   As a proximate result of Defendant COUNTRYWIDE's violation of 15 U.S.C. § 1691, Plaintiff and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

64.   In addition, Defendant COUNTRYWIDE's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant COUNTRYWIDE acted with malice and reckless indifference to the federally protected rights of Plaintiff and members of the Class. As a result, Plaintiffs and members of the Class are entitled to punitive damages.

65.   Moreover, Defendant COUNTRYWIDE continues to discriminate in violation of the ECOA against Class Members every time Defendant COUNTRYWIDE provides a home mortgage loan as described herein. If not enjoined from such violation by the Court, Defendant COUNTRYWIDE will continue to engage in conduct that disregards the rights of Plaintiff and members of the Class, and cause Plaintiff and members of the Class irreparable injury for which there is no adequate remedy at law. 15 U.S.C. § 1691(e). Plaintiff and members of the Class ask this Court to declare the rights of the parties herein regarding Defendant COUNTRYWIDE's obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

## COUNT II
## RACIAL DISCRIMINATION
### (42 U.S.C. § 1981)

66.   Plaintiff repeats, re-alleges, and incorporates the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

67.   Defendant COUNTRYWIDE intentionally discriminated against Plaintiff and Class Members by charging them higher interest rates, fees and costs

CLASS ACTION COMPLAINT

1 | than were charged to similarly situated non-minority borrowers, and imposing

2 | higher and less favorable prepayment and other penalties on them than were

3 | imposed on similarly situated non-minority borrowers.

4 |     68.    Defendant COUNTRYWIDE unlawfully discriminated against

5 | Plaintiff and Class Members in (i) formation of contracts, (ii) making,

6 | performance, modification, and termination of contracts, (iii) the enjoyment of all

7 | benefits, privileges, terms and conditions of the contractual relationship, and/or (iv)

8 | conduct that interferes with the right to establish and enforce contract obligations.

9 |     69.    Defendant COUNTRYWIDE's actions violate 42 U.S.C. § 1981, as

10 | well as the rights of Plaintiff and the Class under the Fifth, Thirteenth, and

11 | Fourteenth Amendments to the Constitution of the United States.

12 |     70.    Plaintiff and Class Members are entitled to injunctive and declaratory

13 | relief and damages, or make whole equitable relief as a result of Defendant

14 | COUNTRYWIDE's discriminatory conduct.

15 |     71.    At no time has Defendant COUNTRYWIDE undertaken corrective

16 | action to ameliorate its racially discriminatory practices.  Defendant

17 | COUNTRYWIDE continues to reap the profits of its discriminatory practices and

18 | continues to discriminate.  Defendant COUNTRYWIDE's conduct as alleged

19 | herein was intentional, willful, wanton, reckless, malicious, outrageous, or

20 | otherwise aggravated beyond mere negligence.  Defendant COUNTRYWIDE has

21 | acted with malice and reckless indifference to the federally protected rights of

22 | Plaintiff and members of the Class.  As a result, Plaintiff and members of the Class

23 | are entitled to punitive damages.

### COUNT III

### RACIAL DISCRIMINATION

### (42 U.S.C. § 1982)

27 |     72.    Plaintiff repeats, re-alleges, and incorporates the allegations contained

28 | in paragraphs 1 through 58 above as if fully set forth herein.

CLASS ACTION COMPLAINT

73.     Section 42 U.S.C. §1982 provides that all citizens of the United States "shall have the same right, in every State and Territory, as is enjoyed by White citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

74.     Defendant COUNTRYWIDE has discriminated against Plaintiff and the Class with respect to their home mortgage loans by charging Plaintiff and the Class higher interest rates and other discretionary fees, and imposing higher penalties on them, than Defendant COUNTRYWIDE has charged and imposed on similarly situated non-minority consumers.  As a result of Defendant COUNTRYWIDE's conduct, Plaintiff and the Class have not had the same right as Caucasians to inherit, purchase, sell, hold, and convey real property.  Defendant COUNTRYWIDE has thereby violated 42 U.S.C. § 1982.

75.     Defendant COUNTRYWIDE's violation of 42 U.S.C. § 1982 was intentional and malicious.

76.     As a proximate result of Defendant COUNTRYWIDE's violation of 42 U.S.C. § 1982, Plaintiff and members of the Class have been injured, and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.  In addition, Defendant COUNTRYWIDE's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Defendant COUNTRYWIDE acted with malice and reckless indifference to the federally protected rights of Plaintiff and members of the Class.  As a result, Plaintiff and members of the Class are entitled to punitive damages.

**COUNT IV**

**VIOLATION OF THE FAIR HOUSING ACT**

**(42 U.S.C. §§ 3601 – 3619)**

77.     Plaintiff repeats, re-alleges and incorporates the allegations in paragraphs 1 through 58 above as if fully set forth herein.

78.     Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA.  42 U.S.C. § 3605(b).

79.     By imposing higher interest rates and other discretionary fees and less favorable terms on residential mortgage loans to Plaintiff and Class Members than it imposed on non-minority mortgage borrowers, Defendant COUNTRYWIDE has discriminated against Plaintiff and members of the Class concerning their ability to participate in real estate-related transactions, and in the terms and conditions of such transactions, in violation of the FHA.  42 U.S.C. § 3605(a).

80.     In addition, Defendant COUNTRYWIDE's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, had a disparate impact upon Plaintiffs and Class Members.

81.     As a proximate result of Defendant COUNTRYWIDE's violation of 42 U.S.C. § 3605, Plaintiff and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

82.     In addition, Defendant COUNTRYWIDE's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Defendant COUNTRYWIDE acted with malice and reckless indifference to the federally protected rights of Plaintiff and members of the Class.  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

83.     Moreover, Defendant COUNTRYWIDE continues to discriminate in violation of the FHA against members of the Class every time Defendant COUNTRYWIDE provides a home mortgage loan as described herein.  If not enjoined from such violation by the Court, Defendant COUNTRYWIDE will

**CLASS ACTION COMPLAINT**

1   continue to engage in conduct that disregards the rights of Plaintiff and members of

2   the Class, and cause Plaintiff and members of the Class irreparable injury for

3   which there is no adequate remedy at law.  42 U.S.C. § 3613(c).

4        84.     Plaintiff and members of the Class ask this Court to declare the rights

5   of the parties herein regarding Defendant COUNTRYWIDE's obligation to

6   participate in credit transactions without discriminating against applicants for

7   credit on the basis of the applicants' race.

8                             **PRAYER FOR RELIEF**

9        WHEREFORE PREMISES CONSIDERED, Plaintiff requests the following

10  relief:

11       A.      An order determining that the action is a proper class action pursuant

12  to Rule 23 of the Federal Rules of Civil Procedure;

13       B.      A judgment awarding Plaintiff and Class Members costs and

14  disbursements incurred in connection with this action, including reasonable

15  attorneys' fees, expert witness fees and other costs;

16       C.      A judgment granting extraordinary equitable and/or injunctive relief

17  as permitted by law or equity, including rescission, restitution, reformation,

18  attaching, impounding, or imposing a constructive trust upon, or otherwise

19  restricting, the proceeds of Defendant's ill-gotten funds to ensure that Plaintiff and

20  Class Members have an effective remedy;

21       D.      A judgment awarding Plaintiff and Class Members compensatory

22  damages according to proof;

23       E.      A judgment awarding punitive damages to Plaintiff and Class

24  Members;

25       F.      A judgment granting declaratory and injunctive relief and all relief

26  that flows from such injunctive and declaratory relief; and

27

28

**CLASS ACTION COMPLAINT**

1   G.   A judgment or other order granting such other and further relief as the

2   Court deems just and proper including, but not limited to, recessionary relief and

3   reformation.

4   DATED this 11th day of September, 2007.

5
                                        BONNETT, FAIRBOURN,
6                                       FRIEDMAN, & BALINT, P.C.

7                                       CHAVEZ & GERTLER, L.L.P.

8

9

10  By Nance Becker
                                        Nance F. Becker
11

12                                      Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

1    **JURY TRIAL DEMANDED**

2    Plaintiffs demand a trial by jury on all issues so triable.

3

4    DATED this 11ᵗʰ day of September, 2007.

5                                    BONNETT, FAIRBOURN,
                                     FRIEDMAN, & BALINT, P.C.
6

7                                    CHAVEZ & GERTLER, L.L.P.

8

9                                    By_Nance Becker_____
10                                       Nance F. Becker

11                                   Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -